h KIRBY, J.,
dissenting with reasons.
I dissent because the transcript strongly suggests that both parties fully intended to enter into a binding consent judgment. *813 Ms. Breithoff on behalf of Mr. Hardy says in the transcript: “This is a stipulation for a consent judgment-” Mr. Borstell, on behalf of Ms. Hardy said: “We have a consent judgment.” Nothing could be more clear. C.C. art. 1853 makes this a judicial confession and is full proof against those who make it. The trial court’s reasons for finding that there was no meeting of the minds were not focused as much on the intent of the parties as upon his mistaken belief that the agreement had to be transcribed into a judgment to become enforceable.
The transcript shows the attorneys described the provisions of this consent judgment in detail. It is quite clear that the parties were adopting the recommendations contained in the Family Service custody evaluation report. The majority misconstrues the sentence “If there is going to be any deviation to this consent judgment, it has to be done in writing forty-eight hours [sic.]” [Italics added.] However, the genesis of this language is paragraph 4 of the Family Service evaluation report, to wit:
[[Image here]]
|q4. The parents should share school holidays equally. Special occasions such as birthdays and graduations should be shared by both parents. They can choose to split the day or have both families participate together.

Any deviations in this schedule should be discussed by the adults and put in writing prior to the visits taking place. Both parents should be in agreement about changes in the visiting schedule prior to these changes being implemented.

[[Image here]]
It is clear that the provision dictated by Ms. Hardy’s former counsel was meant to incorporate the italicized language from recommendation 4 into the stipulation. It did not apply to the entirety of the stipulation.
The record reflects that the parties implemented the very visitation schedule at issue. It is clear they understood what it meant. . A literal application of the phrase “deviation to this consent judgment” is thus of no avail because not only did the parties not deviate in writing within forty-eight hours, they actually lived by the agreement for some time.
The fact that a formal writing was contemplated is of no moment. In virtually every domestic case the stipulation provides that it will be followed by a written formal judgment. This is for the convenience of the parties and the court. It is not meant to be a condition precedent (suspensive condition) to enforcement of the agreement. The written judgment merely serves as a neat, ready reference of the agreement facilitating its enforcement. Civil Code article 3071 makes the “recitation in open court that is capable of transcription” sacramental, not the reduction to writing in a subsequent judgment. If the signing of a subsequent consent judgment were to be a prerequisite to enforcement of the agreement, not only would we ignore the unambiguous import of the legislation but we would be facilitating chaos at the courthouse. The whole idea of compromise is that everyone gives a little in order to get a little. In these extremely emotionally | ^charged proceedings, where people are frequently vindictive and sometimes irrational, they often second guess their decision after leaving the courthouse. By making it easy for them to renege on their solemn agreement we only foment more needless litigation.
Further, the majority err when they accept a statement from counsel in an appellate brief over the face of the record. The transcript, which says the recitation occurred in open court should prevail. If the majority presumes the judge was not present, they should remand the case for a determination of that issue, for it is clear that if the judge was not present, there is no valid transaction and compromise. Sul *814 livan v. Sullivan, 95-2122 (La.4/8/96), 671 So.2d 315 and the matter should be resolved on that issue alone.